UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 7 |
| DON KARL JURAVIN, | Case No. 6:18-bk-06821-LVV |
| Debtor. | Case No. 6:20-bk-01801-LVV |
| _____/ | *Jointly Administered with* |
| MUST CURE OBESITY, CO.,<br>Case No. 6:18-bk-01801-LVV | Case No. 6:18-bk-06821-LVV |
| Applicable Debtor. | |
| _____/ | |
| DENNIS D. KENNEDY,<br>AS CHAPTER 7 TRUSTEE OF THE<br>ESTATE OF MUST CURE OBESITY, CO., | Adv. Pro. No. _____ |
| Plaintiff,<br>v. | |
| DON K. JURAVIN, ANNA JURAVIN, | |
| Defendants. | |
| _____/ | |

## **COMPLAINT**

Dennis D. Kennedy, as Chapter 7 Trustee for the Estate of Must Cure Obesity, Co. ("Trustee"), through counsel, hereby files this Complaint to Avoid and Recover Fraudulent Transfers against Don K. Juravin and Anna Juravin pursuant to 11 U.S.C. §§ 547 and 550 and Chapter 726, *Florida Statutes* ("FUFTA"), and in support thereof, alleges as follows:

## **JURISDICTION AND VENUE**

1.        This Court has jurisdiction over the subject matter of this Complaint pursuant to 28

U.S.C. §§ 1334 and 157.

2.      Venue is proper in this district under 28 U.S.C. § 1409.

3.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A), (E), and (H).

## BACKGROUND

### *The Debtor's Business Affairs.*

4.      The Debtor is one of many entities, including Roca Labs, Inc. ("Roca Labs"); Roca Labs Nutraceutical USA, Inc. ("RLN"); Juravin, Incorporated ("JINC"); and Zero Calorie Labs, Inc. ("ZCL"), owned, operated, and controlled by Don K. Juravin ("Juravin" or "Don Juravin") at all times material hereto. The Debtor, Roca Labs, RLN, JINC, ZCL, are all collectively referred to herein as the "Juravin Entities".

5.      The Debtor, Juravin, and the Juravin Entities were involved in selling weight loss products and providing services relating to weight loss software development.

6.      At all times material hereto, the Debtor, Juravin, and the Juravin Entities were involved in the advertisement, marketing, and promoting of dietary supplements and food products, including the Roca Labs "Formula" and "Anti-Cravings" powder, to consumers throughout the United States as a safe and cost-effective alternative to gastric bypass surgery to combat obesity and achieve substantial weight-loss.

7.      The Debtor, Juravin, and the Juravin Entities accepted consumer payments to Juravin and/or the Juravin Entities for such products, and paid operational expenses on behalf of Juravin and/or the Juravin Entities in connection with the advertising, marketing, promotion, and sale of such products.

8.      Individual consumers each paid Debtor, Juravin, and the Juravin Entities hundreds

of dollars for these worthless weight loss products which were nothing more than a fake medical regime purportedly designed to help consumers lose weight.

9.      The Debtor, Juravin, and the Juravin Entities intended to deceive consumers by marketing the bogus weight-loss products so that the consumers would buy those bogus products, thereby enriching Juravin and the Juravin Entities.

10.     At all times material hereto, acting alone or in concert with others, Debtor, Juravin, and the Juravin Entities formulated, directed, controlled, had the authority to control, or participated in the false advertising and other deceptive business practices perpetrated by the Juravin Entities.

11.     Debtor, Juravin, and the Juravin Entities operated as a common enterprise while engaging in deceptive business practices and fraudulent activities.

12.     The Debtor, and each of the Juravin Entities, was created to further the deceptive and fraudulent weight-loss scam, or to conceal funds of the scam or of other scams created or perpetrated by Juravin.

13.     The Debtor, and each of the Juravin Entities, was created, formed, and operated for an improper purpose.

14.     At all times material hereto, Juravin had authority and control over the Juravin Entities, including without limitation the Debtor.

15.     At all times material hereto, the Juravin Entities, including without limitation the Debtor, were mere instrumentalities of Juravin.

16.     At all times material hereto, Juravin used the financial accounts of the Juravin Entities, including without limitation the financial accounts of Debtor, as his own personal piggy bank.

17.    At all times material hereto, Juravin maintained control of the accounts of the Juravin Entities, including without limitation the Debtor.

18.    At all times material hereto, Juravin transferred substantial funds between and among the bank accounts of Debtor, Juravin, and the Juravin Entities.

19.    For example,[1] from October 31, 2014 to October 31, 2018, the following transfers occurred:

    a.  at least $2,202,915.58 from Juravin's personal accounts to accounts held by the Debtor;

    b.  at least $2,833,206.28 from the Debtor's accounts to Juravin's personal accounts;

    c.  at least $1,000,077.00 from the Debtor's accounts to RLN's accounts;

    d.  at least $2,005,557.00 from Juravin's personal accounts to RLN's accounts;

    e.  at least $587,392.15 from RLN accounts to Juravin's personal accounts;

    f.  at least $476,710.05 from the RLN accounts to the Debtor's accounts;

    g.  at least $964,400.00 from Juravin's personal accounts to accounts held by RLN.

20.    From November 1, 2012 to January 29, 2016, Juravin transferred at least $1,834,731.43 from RLN's accounts to Juravin's personal accounts, and at least $1,160,100.00 from RLN's accounts to JINC's accounts.

21.    Due to the Debtor's, Juravin, and the Juravin Entities' intermingled accounts, and the extent of the transfers between and among such accounts, a transfer from any account associated with Juravin or a Juravin Entity constitutes a transfer of property of the Debtor.

---

[1] The specific transfers referenced in this paragraph and the following paragraph are meant as examples only. Juravin failed to adequately respond to discovery in this case and the Trustee obtained a "break order" (Doc. No. 502) to gain access to the Debtor's electronic records. The Trustee is in the process of reviewing those records, which will likely disclose more transfers of this type.

## PROCEDURAL HISTORY

### *The FTC Case.*

22.     On September 24, 2015, the Federal Trade Commission ("FTC") filed a Complaint for Permanent Injunction and Other Equitable Relief, initiating case number 8:15-cv-02231, in the United States District Court for the Middle District of Florida ("FTC Case"), against Roca Labs; RLN; Don Juravin; and George C. Whiting, alleging claims for deceptive trade practices under Sections 5(a) and 12 of the Federal Trade Commission Act.

23.     On February 19, 2016, the FTC filed an Amended Complaint to name additional defendants: MCO; JINC; and ZCL.

24.     The FTC alleged that Juravin and the Juravin Entities falsely or deceptively advertised their weight-loss products, causing over $25 million in consumer injury.

25.     The FTC also alleged Juravin and the Juravin Entities unfairly used non-disparagement clauses in their sale terms for these products as part of their scheme, purporting to prohibit consumers from making truthful or non-defamatory negative comments or reviews about Juravin and the Juravin Entities, their products, or their employees.

26.     The District Court entered a temporary restraining order against Juravin and the Juravin Entities to halt their fraudulent scheme, and later entered a preliminary injunction and asset freeze order.

27.     In April 2018, the FTC moved for summary judgment against Juravin and the Juravin Entities on all counts, including the FTC's claim for monetary relief.

28.     Juravin and the Juravin Entities, which were represented by counsel throughout the FTC Case, opposed the FTC's motion and moved for partial summary judgment solely on the unfair non-disparagement clause claim.

29.     In September 2018, the District Court issued an order granting summary judgment to FTC on all counts as to liability, but requiring further briefing as to the amount of monetary relief.

30.     The District Court denied the motion for partial summary judgment by Juravin and the Juravin Entities.

31.     In the Summary Judgment Order, the District Court found that Juravin and the Juravin Entities were liable for violating Sections 5 and 12 of the FTC Act because they:

a.  made false and unsubstantiated weight-loss claims about their products;

b.  falsely claimed that use of their products was scientifically proven to have a ninety-percent success rate in forcing users to eat half their usual food intake and cause substantial weight loss;

c.  deceptively failed to disclose their financial relationship to testimonialists who worked for them, and their control of a supposedly independent and objective information website that they used to promote their products;

d.  misrepresented the nature of that purportedly independent site;

e.  misrepresented that they would keep their customers' private health information confidential;

f.  misrepresented that consumers had agreed to non-disparagement clauses in exchange for a substantial discount on the products;

g.  unfairly suppressed negative information about Juravin and the Juravin Entities and their falsely advertised products, to the detriment of subsequent purchasers, by making threats to sue, and filing of lawsuits against, dissatisfied consumers for violating non-disparagement clauses in their online sales contracts.

32.     The Honorable Mary Scriven of the United States District Court for the Middle District of Florida found Juravin jointly and severally liable with the Juravin Entities for their deceptive conduct because they operated as a common enterprise under Juravin's ownership and control, with common officers, business functions, employees, and office locations, Juravin knew about the false and deceptive representations, Juravin participated in the deceptive acts, and Juravin had authority to control the Juravin Entities.

33.     On November 6, 2018, the District Court issued an order for $25,246,000.00 in monetary relief against Juravin and the Juravin Entities.

34.     On January 4, 2019, the District Court entered a permanent injunction and a Final Judgment against Juravin and the Juravin Entities in the amount of $25,246,000.00 ("FTC Final Judgment").

35.     On October 27, 2020, following a two-day trial conducted by this Court, the Honorable Karen S. Jennemann entered a Memorandum Opinion finding Juravin intentionally tricked customers into buying the weight-loss products through consistent and repeated misrepresentations, and intended to deceive customers of the Juravin Entities.

36.      This Court found the FTC Final Judgment non-dischargeable as against Juravin.

### *The Juravin Bankruptcy Case.*

37.     On October 31, 2018 (the "Juravin Petition Date"), Juravin filed a Chapter 7 bankruptcy case (the "Juravin Bankruptcy Case").

38.     The Trustee was duly appointed as the Chapter 7 Trustee.

39.     On September 16, 2019, upon Juravin's motion, the Juravin Bankruptcy Case was converted to Chapter 11 from Chapter 7.

40.     On March 16, 2020, after sustaining all objections to confirmation of Juravin's

proposed Chapter 11 plan and finding that Juravin "is unable to articulate any reasonable way to succeed in [the] Chapter 11 case", the Court re-converted the case back to Chapter 7.

41.    On October 5, 2020, the United States Trustee conducted a chapter 7 trustee election.

42.    Trustee was duly elected as Chapter 7 Trustee.

### The MCO Bankruptcy Case.

43.    On January 31, 2020 (the "MCO Petition Date"), the Debtor filed a voluntary Chapter 11 bankruptcy case, case number 6:20-bk-1801 (the "MCO Bankruptcy Case").

44.    On May 29, 2020, the MCO Bankruptcy Case converted from Chapter 11 to Chapter 7.

45.    On May 29, 2020, Trustee was appointed as the Chapter 7 Trustee.

46.    On November 19, 2020, the Court ordered the Juravin Bankruptcy Case and the MCO Bankruptcy Case to be jointly administered.

## FACTUAL ALLEGATIONS

### The Anna Juravin Transfers

47.    On or about January 4, 2016, the Debtor and Anna Juravin purportedly entered into an Employment Agreement (the "Anna-MCO Agreement").

48.    Don Juravin, Anna Juravin's husband, executed the Anna-MCO Agreement on behalf of the Debtor.

49.    Pursuant to the Anna-MCO Agreement, the Debtor would pay Anna Juravin the following amounts:

a.    $45,000.00 for 2016;

b.    $55,000.00 for 2017;

c.    $65,000.00 for 2018;

d.  $85,000.00 for 2019;

e.  $105,000.00 for 2020;

for a total of $355,000.00.

50.    Within the 4 (four) years prior to the MCO Petition Date, the Debtor transferred at least $40,000.00 to or for the benefit of Anna Juravin purportedly in payment of her salary (the "Anna Money Transfers").

51.    Upon information and belief, the Debtor, and/or Juravin and the Juravin Entities transferred additional sums in an unknown amount to or for the benefit of Anna Juravin (the "Anna Unknown Amounts" and together with the Anna Money Transfer, the "Anna Juravin Transfers").

52.    The Anna Juravin Transfers were excessive income for the alleged services provided by Anna Juravin to the Debtor.

53.    The Anna Juravin Transfers are transfers of monies obtained by the Debtor through the operation of the fraudulent and deceptive weight-loss scam.

54.    The Anna Juravin Transfers are transfers of ill-gotten gains.

**The Don Juravin Transfers**

55.    On or about October 1, 2017, the Debtor "and/or Roca Labs Nutraceutical USA, Inc." and Don Juravin purportedly entered into an Employment Agreement (the "Don-MCO Agreement").

56.    Don Juravin executed the Don-MCO Agreement on his own behalf.

57.    Don Juravin executed the Don-MCO Agreement on behalf of the Debtor.

58.    Don Juravin executed the Don-MCO Agreement on behalf of the RLN.

59.    Pursuant to the Don-MCO Agreement, the Debtor would pay Don Juravin the following amounts:

a.  $800,000 for the First Year;

b.  $1,000,000 for the Second Year;

c.  $1,500,000 for the Third Year;

d.  $2,000,000 for the Fourth Year;

e.  $3,000,000 for the Fifth Year;

for a total of $8,300,000.

60.     Upon information and belief, within the 4 (four) years prior to the MCO Petition Date, the Debtor transferred at least $400,000 to or for the benefit of Don Juravin purportedly in payment of his salary (the "Don Money Transfers").

61.     Upon information and belief, the Debtor, and/or Juravin and the Juravin Entities transferred additional sums in an unknown amount to or for the benefit of Don Juravin (the "Don Unknown Amounts" and together with the Don Money Transfers, the "Don Juravin Transfers").

62.     The Don Juravin Transfers were excessive income for the alleged services provided by Don Juravin to the Debtor.

63.     The Don Juravin Transfers are transfers of monies obtained by the Debtor through the operation of the fraudulent and deceptive weight-loss scam.

64.     The Don Juravin Transfers are transfers of ill-gotten gains.

## COUNT 1: ACTUAL FRAUD
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### AGAINST ANNA JURAVIN

65.     The Trustee realleges paragraphs 1 through 54 as if fully set forth herein.

66.     This is an adversary proceeding to recover fraudulent transfers from Anna Juravin pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(A) and 550, and Florida Statute §§ 726.105(1)(a) and 726.108.

67.     Within four (4) years prior to the MCO Petition Date, Debtor effectuated the Anna Juravin Transfers, in the amount of at least $40,000.00, to or for the benefit of Anna Juravin.

68.     The Anna Juravin Transfers were made with the actual intent to hinder, delay, or defraud present and future creditors of the Debtor.

69.     At the time of the Anna Juravin Transfers, Debtor was insolvent or became insolvent shortly thereafter.

70.     Debtor was insolvent at the time of the Anna Juravin Transfers in that its liabilities exceeded its assets.

71.      The Anna Juravin Transfers are avoidable and should be avoided, pursuant to and under Fla. Stat. §§ 726.105(1)(a), 726.108, and 11 U.S.C. §§ 544(b)(1) and 548.

72.     Under 11 U.S.C. § 550(a), the Trustee may recover the Anna Juravin Transfers for the benefit of the estate, to the extent that the Anna Juravin Transfers are avoided under 11 U.S.C. §§ 544 and 548 and FUFTA.

73.     There is at least one creditor holding an unsecured claim under 11 U.S.C. § 502 who would have standing to bring a claim under FUFTA.

WHEREFORE, the Trustee demands a judgment against Anna Juravin as follows: (i) that the Anna Juravin Transfers, in the amount of at least $40,000.00, to Anna Juravin were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550, and FUFTA; (ii) avoiding the Anna Juravin Transfers to Anna Juravin and entering a judgment in favor of the Trustee for the value of the Anna Juravin Transfers pursuant to 11 U.S.C. § 550, plus pre-judgment interest from the date of the Anna Juravin Transfers and costs of the suit or recovery of the Anna Juravin Transfers; (iii) attaching or providing another provisional remedy against the Anna Juravin Transfers or other property of the transferee in accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

## COUNT 2: CONSTRUCTIVE FRAUD
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
## AGAINST ANNA JURAVIN

74.     Plaintiff realleges paragraphs 1 through 54 as if fully set forth herein.

75.     This is an adversary proceeding to recover fraudulent transfers from Anna Juravin pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(B) and 550, and Florida Statutes §§ 726.105(1)(b), 726.106(1), and 726.108.

76.     Within four (4) years prior to the MCO Petition Date, Debtor effectuated the Anna Juravin Transfers to and for the benefit of Anna Juravin.

77.      Debtor did not receive reasonably equivalent value in exchange for the Anna Juravin Transfers.

78.     At the time of the Anna Juravin Transfers, Debtor intended to incur, or reasonably should have believed it would incur, debts beyond its ability to pay them as they became due.

79.     At the time of the Anna Juravin Transfers, Debtor was insolvent or became insolvent as a result of the Anna Juravin Transfers.

80.     At the time of the Anna Juravin Transfers, Debtor's liabilities exceeded his assets.

81.     The Anna Juravin Transfers are avoidable under Florida Statute §§ 726.105(1)(b), 726.106(1), and 726.108, and 11 U.S.C. § 544(b)(1).

82.     There is at least one actual holder of an allowed unsecured claim under 11 U.S.C. § 502 who would have standing to assert a claim for relief under FUFTA.

83.     Pursuant to 11 U.S.C. § 550(a), the Trustee may recover the Anna Juravin Transfers for the benefit of the estate, insofar as the Anna Juravin Transfers are avoided under 11 U.S.C. §§ 544, 548 and FUFTA.

WHEREFORE, the Trustee demands judgment against Anna Juravin as follows: (i) that the Anna Juravin Transfers, in the amount of at least $40,000.00 were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548 (a)(1)(B) and 550, and FUFTA; (ii) avoiding the Anna Juravin Transfers to Anna Juravin and entering a judgment in favor of the Trustee for the value of the Anna Juravin Transfers, plus pre-judgment interest from the date of the Anna Juravin Transfers and costs of the suit or recovery of the Anna Juravin Transfers; (iii) attaching or providing another provisional remedy against the Anna Juravin Transfers or other property of the transferee in accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

## COUNT 3: ACTUAL FRAUD
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
## AGAINST DON JURAVIN

84.     The Trustee realleges paragraphs 1 through 46, and 55 through 64, as if fully set forth herein.

85.     This is an adversary proceeding to recover fraudulent transfers from Don Juravin pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(A) and 550, and Florida Statute §§ 726.105(1)(a) and 726.108.

86.     Within four (4) years prior to the MCO Petition Date, Debtor effectuated the Don Juravin Transfers, in the amount of at least $400,000.00, to or for the benefit of Don Juravin.

87.     The Don Juravin Transfers were made with the actual intent to hinder, delay, or defraud present and future creditors of the Debtor.

88.     At the time of the Don Juravin Transfers, Debtor was insolvent or became insolvent shortly thereafter.

89.     Debtor was insolvent at the time of the Don Juravin Transfers in that its liabilities exceeded its assets.

90.      The Don Juravin Transfers are avoidable and should be avoided, pursuant to and under Fla. Stat. §§ 726.105(1)(a), 726.108, and 11 U.S.C. §§ 544(b)(1) and 548.

91.     Under 11 U.S.C. § 550(a), the Trustee may recover the Don Juravin Transfers for the benefit of the estate, to the extent that the Don Juravin Transfers are avoided under 11 U.S.C. §§ 544 and 548 and FUFTA.

92.     There is at least one creditor holding an unsecured claim under 11 U.S.C. § 502 who would have standing to bring a claim under FUFTA.

WHEREFORE, the Trustee demands a judgment against Don K. Juravin as follows: (i) that the Don Juravin Transfers, in the amount of at least $400,000.00, to Don Juravin were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550, and FUFTA; (ii) avoiding the Don Juravin Transfers to Don Juravin and entering a judgment in favor of the Trustee for the value of the Don Juravin Transfers pursuant to 11 U.S.C. § 550, plus pre-judgment interest from the date of the Don Juravin Transfers and costs of the suit or recovery of the Don Juravin Transfers; (iii) attaching or providing another provisional remedy against the Don Juravin Transfers or other property of the transferee in accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

## COUNT 4: CONSTRUCTIVE FRAUD
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
## AGAINST DON JURAVIN

93.     Plaintiff realleges paragraphs 1 through 46, and 55 through 64 as if fully set forth herein.

94.     This is an adversary proceeding to recover fraudulent transfers from Don Juravin pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(B) and 550, and Florida Statutes §§ 726.105(1)(b), 726.106(1), and 726.108.

95.     Within four (4) years prior to the MCO Petition Date, Debtor effectuated the Don Juravin Transfers to and for the benefit of Don Juravin.

96.      Debtor did not receive reasonably equivalent value in exchange for the Don Juravin Transfers.

97.     At the time of the Don Juravin Transfers, Debtor intended to incur, or reasonably should have believed it would incur, debts beyond its ability to pay them as they became due.

98.     At the time of the Don Juravin Transfers, Debtor was insolvent or became insolvent as a result of the Don Juravin Transfers.

99.     At the time of the Don Juravin Transfers, Debtor's liabilities exceeded his assets.

100.    The Don Juravin Transfers are avoidable under Florida Statute §§ 726.105(1)(b), 726.106(1), and 726.108, and 11 U.S.C. § 544(b)(1).

101.    There is at least one actual holder of an allowed unsecured claim under 11 U.S.C. § 502 who would have standing to assert a claim for relief under FUFTA.

102.    Pursuant to 11 U.S.C. § 550(a), the Trustee may recover the Don Juravin Transfers for the benefit of the estate, insofar as the Don Juravin Transfers are avoided under 11 U.S.C. §§ 544, 548 and FUFTA.

WHEREFORE, the Trustee demands judgment against Don Juravin as follows: (i) that the Don Juravin Transfers, in the amount of at least $400,000.00 were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548 (a)(1)(B) and 550, and FUFTA; (ii) avoiding the Don Juravin Transfers to Don Juravin and entering a judgment in favor of the Trustee for the value of the Don Juravin

Transfers, plus pre-judgment interest from the date of the Don Juravin Transfers and costs of the suit or recovery of the Don Juravin Transfers; (iii) attaching or providing another provisional remedy against the Don Juravin Transfers or other property of the transferee in accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

Dated January 30, 2022.

/s/Lauren M. Reynolds
Bradley M. Saxton, Esquire
Florida Bar No. 0855995
bsaxton@whww.com
Lauren M. Reynolds, Esquire
Florida Bar No. 112141
Lreynolds@whww.com
**Winderweedle, Haines, Ward
  & Woodman, P.A.**
Post Office Box 880
Winter Park, FL 32790-0880
(407) 423-4246
(407) 645-3728 (facsimile)
Attorneys for Dennis D. Kennedy,
Trustee

-and-

/s/James D. Ryan
James D. Ryan, Esquire
Florida Bar No. 0976751
jdr@ryanlawgroup.net
lauren@ryanlawgroup.net
**Ryan Law Group, PLLC**
636 U.S. Highway One, Suite 110
North Palm Beach, FL 33408
Main: (561) 881-4447   Fax: (561) 881-4461
Special Counsel to Dennis D. Kennedy,
Trustee